## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: _____

RICHARD PATRICK MICHAEL O'SHEA,
Plaintiff,

v.

JASON NOVAK,
Defendant.
_____/

## COMPLAINT FOR PERJURY UNDER 18 U.S.C. § 1621 AND RELATED RELIEF

Plaintiff, RICHARD PATRICK MICHAEL O'SHEA ("Plaintiff" or "O'Shea"), by and through undersigned counsel, brings this action for perjury, fraud on the court, and injunctive relief against Defendant JASON NOVAK ("Novak"), and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as the claim arises under the laws of the United States, specifically 18 U.S.C. § 1621.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the events giving rise to the claims occurred within the Southern District of Florida.

### PARTIES

3. Plaintiff Richard Patrick Michael O'Shea is an individual and resident of Florida.

4. Defendant Jason Novak is, upon information and belief, an attorney who practices in Canada and appeared as an expert witness in a special set hearing in Case No. CACE-24-005917, held in Broward County, Florida.

1

## FACTUAL ALLEGATIONS

5. On February 20, 2025, a special set hearing was held in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida (Case No. CACE-24-005917), before Judge Jack Tuter.

6. Defendant Jason Novak appeared as an expert witness on behalf of the Plaintiff, Promark Electronics, Inc.

7. During his testimony, Jason Novak unequivocally denied having appeared as counsel of record in the Canadian litigation that served as part of his basis and expertise on foreign civil procedure.   This testimony was vital to establish Jason Novak's expertise on foreign civil procedure.

8. Contrary to this sworn testimony, emails subsequently produced to Plaintiff's counsel confirm that Jason Novak was in fact counsel of record in the Canadian proceedings involving his defense of his client relating to Quebec procedural law.   Additionally, subsequent emails showed that Jason Novak had actively participated in those proceedings.

9. These emails, which are attached hereto as **Exhibit A**, show that Jason Novak communicated in his capacity as legal counsel and was copied on correspondence involving legal strategy, filings, and service communications in the Canadian litigation.

10. Defendant's testimony was knowingly false, material to the proceedings, and designed to mislead the Court into believing that he was a credible expert in Quebec procedural law and also a neutral expert rather than a prior advocate in the matter, as it related to matters outside of litigation, such as negotiating the initial supplier agreement on behalf of Promark Electronics.

11. The Court relied on Novak's testimony to reject the expert testimony of Plaintiff's own expert, Olga Koutsouris, and instead accepted the opinion of Jason Novak as credible.

12. As a direct result of this perjury, the Court entered a **Final Order** overruling Plaintiff's objection to domestication of the Canadian judgment, rendering Plaintiff jointly and severally liable for over $570,000 CAD in attorney's fees and punitive damages. A copy of the Final Order is attached hereto as **Exhibit B**.

13. Had Novak's true role as former counsel been disclosed – evidencing his role as lead negotiator of the supply agreement between Promark Electronics and ByoPlanet, the Court would have been required to strike his testimony or at minimum evaluate it with the appropriate level of scrutiny as biased.

## <u>COUNT I – PERJURY UNDER 18 U.S.C. § 1621</u>

14. Plaintiff re-alleges paragraphs 1 through 13 as if fully set forth herein.

15. Defendant Jason Novak, while under oath, willfully and knowingly gave false testimony regarding a material fact: namely, that he was not counsel of record in the Canadian matter.

16. This false testimony was given in a proceeding over which a United States court has jurisdiction, and the testimony was material to the outcome of the case.

17. As a result of the false testimony, Plaintiff suffered significant harm, including the entry of a Final Judgment against him based on tainted evidence.

18. Excerpt from Hearing Transcript – Direct and Cross Examination of Jason Novak.  A copy of the exert of the hearing transcript is attached hereto as **Exhibit C**.

19. **MR. PAUL:** Mr. Novak, in your testimony earlier you said that you were counsel for Promark at the onset of this litigation, correct?
**MR. NOVAK:** Correct.
**MR. PAUL:** Is it correct that you were the responsible member for drafting the contract at issue in this matter?
**MR. NOVAK:** That is incorrect.
**MR. PAUL:** Isn't it true that you were counsel of record that drafted the supplier agreement that is at issue of the underlying judgment?
**MR. NOVAK:** No. That's not true, counsel. I don't draft contracts. I -- I litigate.

20. **MR. PAUL:** Are you familiar with a matter by the name of *Auto Visio vs. Kaplan*, a matter that you were co-counsel on, back in 2016?

    **MR. NOVAK:** I -- I am not, counsel.

    **MR. PAUL:** You were co-counsel on that matter.

    **MR. NOVAK:** I -- I am not aware of that. I plead a lot of cases, Mr. Paul, and that's going back, if I'm not mistaken, close to nine years.

    **MR. PAUL:** So you're saying that you do not recall being co-counsel on the matter with *Auto Visio vs. Kaplan*?

    **MR. NOVAK:** That's correct.

21. **MR. NOVAK:** You will look at the bottom of the page. There's a reason why I didn't remember. It's because I was not counsel on this file. You can see that it clearly states...

    **MR. PAUL:** Are you still stating, Mr. Novak, that you are not recalling being a co-counsel on this matter?

    **MR. NOVAK:** Well, it's clearly indicated on the bottom of the page that I'm not involved in the case... I don't see my name, Mr. Paul, and I'm trying to understand where you see it.

22. These statements directly contradict email evidence showing that Novak was copied on legal filings and actively participated in the aforementioned Canadian litigation — including service communications and trial correspondence. His denial of being counsel on the case while under oath meets the elements of perjury under 18 U.S.C. § 1621.

## COUNT II – FRAUD ON THE COURT

23. Plaintiff re-alleges paragraphs 1 through 22 as if fully set forth herein.

24. Defendant knowingly perpetrated fraud on the court by concealing his prior representation and presenting himself as an impartial expert.

25. This misconduct subverted the integrity of the judicial process and deprived Plaintiff of a fair hearing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to:

a. Declare that Defendant Jason Novak committed perjury under 18 U.S.C. § 1621;

b. Issue a finding of fraud on the court and refer this matter to the appropriate disciplinary and prosecutorial bodies;

c. Award attorney's fees and costs;

d. Grant such other and further relief as the Court deems just and proper.

Dated this ___ day of April, 2025

Respectfully submitted,
JUSTICE LAW GROUP, LLP

/s/James M. Paul _____
James M. Paul, Esq.
Florida Bar No. 1010819
850 Southeast 8th Avenue
Fort Lauderdale, FL 33316
Tel: (917)562-9607
jpaul@justicelawgroup.ai

# EXHIBIT A

**From:** Jason S. Novak jnovak@rsslex.com
**Subject:** Autovisio OY (500-17063842-119) (500-17-063816-119)
**Date:** November 26, 2012 at 12:40 PM
**To:** Olga Koutsouris olga@olgaklaw.ca, Giroux, Francois M. fgiroux@MCCARTHY.CA
**Cc:** Jean-Pierre Sheppard jpsheppard@rsslex.com



Dear Colleagues,

I simply wanted to inform you that the certificate of readiness was issued this morning in file # 500-17-063842-119. As a result of the joinder of files, file # 500-17-063842-119 has been added to the provisionary role tomorrow at 2pm in room 2.16.

Thanks,
**Me Jason S. Novak**
Avocat / Lawyer
(514) 393-4042
*jnovak@rsslex.com*

**Robinson Sheppard Shapiro** s.e.n.c.r.l/LLP
Avocats / Barristers & Solicitors
4600 - 800 Place Victoria
Montréal Qc H4Z 1H6
T (514) 878-2631 F (514) 878-1865
www.rsslex.com et/and www.rsscanadaimmigration.com

## http://www.rsslex.com

**AVIS:** Ce courriel privilégié et confidentiel est destiné à la seule personne ou entité à laquelle il est adressé. Pour toute autre personne, toute action prise en rapport à ce courriel ainsi que toute lecture, reproduction, transmission et/ou divulgation d'une partie ou de l'ensemble de celui-ci est interdite. Si vous n'êtes pas la personne autorisée à recevoir ce courriel, S.V.P. le retourner à l'expéditeur et le détruire. Bien que ce courriel ait été traité contre les virus, il est de la responsabilité du destinataire de s'assurer que l'envoi en est exempt. Nos communications avec vous peuvent contenir des renseignements confidentiels ou protégés par le secret professionnel. Si vous désirez que nous communiquions avec vous par un autre moyen de transmission que le courrier électronique ordinaire non sécurisé, veuillez nous en aviser.

**NOTICE:** This privileged and confidential email is intended only for the individual or entity to whom it is addressed. With regard to all others, any action related with this email as well as any reading, reproduction, transmission and/or dissemination in whole or in part of the information included in this email is prohibited. If you are not the addressee, immediately return the email to sender prior to destroying all copies. Even if this email is believed to be free from any virus, it is the responsibility of the recipient to make sure that it is virus exempt. Our communications to you may contain confidential information or information protected under solicitor-client privilege. Please advise if you wish us to use a mode of communication other than regular, unsecured e-mail in our communications with you.

**From:** Jason S. Novak jnovak@rsslex.com
**Subject:** Joinder of Actions Autovisio OY (Authorities)
**Date:** November 21, 2012 at 5:44 PM
**To:** Giroux, Francois M. fgiroux@MCCARTHY.CA, Darche, Jacques S. JDarche@blg.com, Hudon, Marc-Alexandre mahudon@MCCARTHY.CA, Birks, Cristina CBirks@blg.com, ok@rapidweb.ca
**Cc:** Jean-Pierre Sheppard jpsheppard@rsslex.com

Dear Colleagues,

You will find attached our Index of Arguments and Authorities in support of our Motion for the Joinder of Actions in file # 500-17-063842-119 & file # 500-17-063816-113. Considering the absence of contestation, the pleading of our case law will hopefully be unecessary.

Kind regards,
**Me Jason S. Novak**
Avocat / Lawyer
(514) 393-4042
*jnovak@rsslex.com*

**Robinson Sheppard Shapiro** s.e.n.c.r.l/LLP
Avocats / Barristers & Solicitors
4600 - 800 Place Victoria
Montréal Qc H4Z 1H6
T (514) 878-2631 F (514) 878-1865
www.rsslex.com et/and www.rsscanadaimmigration.com

---

## http://www.rsslex.com

**AVIS:** Ce courriel privilégié et confidentiel est destiné à la seule personne ou entité à laquelle il est adressé. Pour toute autre personne, toute action prise en rapport à ce courriel ainsi que toute lecture, reproduction, transmission et/ou divulgation d'une partie ou de l'ensemble de celui-ci est interdite. Si vous n'êtes pas la personne autorisée à recevoir ce courriel, S.V.P. le retourner à l'expéditeur et le détruire. Bien que ce courriel ait été traité contre les virus, il est de la responsabilité du destinataire de s'assurer que l'envoi en est exempt. Nos communications avec vous peuvent contenir des renseignements confidentiels ou protégés par le secret professionnel. Si vous désirez que nous communiquions avec vous par un autre moyen de transmission que le courrier électronique ordinaire non sécurisé, veuillez nous en aviser.

**NOTICE:** This privileged and confidential email is intended only for the individual or entity to whom it is addressed. With regard to all others, any action related with this email as well as any reading, reproduction, transmission and/or dissemination in whole or in part of the information included in this email is prohibited. If you are not the addressee, immediately return the email to sender prior to destroying all copies. Even if this email is believed to be free from any virus, it is the responsibility of the recipient to make sure that it is virus exempt. Our communications to you may contain confidential information or information protected under solicitor-client privilege. Please advise if you wish us to use a mode of communication other than regular, unsecured e-mail in our communications with you.

JN-INDEX
AUTORITES-2012-11...
24 KB

C A N A D A

PROVINCE DE QUÉBEC
DISTRICT DE MONTRÉAL

No:   **500-17-063842-119**


No:   500-17-063816-113


**COUR SUPÉRIEURE**

_____

**AUTOVISIO OY**

                    Demanderesse
c.

**CANADIAN   IMPERIAL   BANK
OF COMMERCE**

                    Défenderesse

_____


**AUTOVISIO OY**

                    Demanderesse
c.

**AZIK IOSIFOVICH KAPLAN**

                    Défendeur

_____

---

**INDEX D'AUTORITÉS DE LA DEMANDERESSE AUTOVISIO OY
(Art. 271 CCP)**

---

A.     La réunion d'actions - articles pertinents du C.p.c.:

      « *Art. 271 C.p.c.*

      *Le tribunal peut en outre ordonner que plusieurs actions
portées devant lui, impliquant ou non les mêmes parties,
soient instruites en même temps et jugées sur la même
preuve; il peut également ordonner que la preuve faite
dans l'une serve dans l'autre ou que l'une soit instruite et
jugée la première, les autres étant suspendues jusque-là.* »

2

B.   Le pouvoir discrétionnaire du tribunal dans le cadre d'une demande de réunion d'actions est large.   La fin visée est de favoriser une saine administration de justice, d'éviter la multiplicité inutile des actions et le risque de jugements contradictoires, tout en limitant les frais et économisant les ressources judiciaires.

1)   <u>2314-4694 Québec inc. & al</u> c. <u>Ville de Saguenay & al</u>, 2008 QCCS 219 (C.S.), par. 17, 18, 19, 22, 23, 24, 25, 26, 27, 30, 31, 32

   « [23]   Par conséquent, de façon générale, le pouvoir discrétionnaire du Tribunal est assez étendu.

   (...)

   [27]   L'investissement en ressources humaines et matérielles que commande la gestion de procès séparés constitue également un facteur prépondérant qui doit être analysé.

   (...)

   [30]   Lors d'une demande de réunion d'actions, ce qui doit être pris en considération, ce ne sont pas uniquement les conclusions recherchées par l'un et l'autre des recours, non plus que leur seul fondement juridique, mais bien la connexité qu'il peut y avoir entre les faits à l'origine de ces actions de façon telle qu'elles puissent être instruites en même temps et jugées sur la même preuve sans causer de préjudice à une des parties.

   (...) »

2)   <u>La Procureure générale du Québec</u> c. <u>Ghislain Corneau & al</u>, 2009 QCCS 2060, (C.S.), par. 1, 2, 3, 4, 6, 7, 8, 9, 11, 23, 24, 25, 26

   « [11]   Ainsi, des litiges qui ne relèvent pas de sources identiques, voire même connexes, même mus entre des parties différentes, peuvent faire l'objet d'une réunion d'actions.   En somme, il s'agit d'une question d'opportunité laissée à la discrétion du Tribunal.

   (...)

   [24] En outre, à l'examen de l'état actuel du dossier, le Tribunal note qu'il subsiste de nombreux éléments qui sont communs à l'ensemble des parties, de telle sorte que la réunion d'actions permettrait d'activer l'instruction des causes, de simplifier la procédure et de limiter les coûts des dossiers en cause. »

C.    Dans l'exercice de sa discrétion, le juge ne doit pas s'en tenir uniquement à analyser les conclusions recherchées ni limiter son analyse au fondement juridique. Il doit plutôt apprécier la connexité qu'il peut y avoir entre les faits à l'origine desdites actions, à savoir si, elles peuvent être instruites en même temps et jugées sur la même preuve.

> 2314-4694 Québec inc. & al c. Ville de Saguenay & al, supra, par. 30, 32

3)    Kennedy c. Centre de crise de Québec Inc., 2003, AZ-50194399 (C.S.)

> « [12] Malgré le fondement du recours contre son employeur (manquement à une obligation contractuelle à la suite de son congédiement sans cause juste et suffisante) est différent du fondement du recours contre le Syndicat (manquement à une obligation extra contractuelle pour avoir porté atteinte à sa réputation), ces seules allégations démontrent qu'il y a un lien étroit entre les faits à l'origine de ces deux litiges justifiant qu'ils soient instruits en même temps et jugés sur la même preuve.
>
> [13] Ce qui doit être pris en considération, ce ne sont pas les conclusions recherchées par l'un et l'autre des recours, non plus que leur fondement juridique, mais bien la connexité qu'il peut y avoir entre les faits à l'origine de ces actions de façon telle qu'elles puissent en même temps et jugés sur la même preuve. »

D.    Lorsqu'une partie importante de la preuve est sensiblement la même dans deux dossiers différents, même s'il y a une preuve distincte quant à certains éléments, l'économie de la justice justifie la réunion.

4)    Les Vergers Missisquois inc. c. Pierre Foglia & al, 2006 QCCS 953 (C.S.), par. 1-5, 14-16, 19-27, 29, 32, 33

> « [27] Par ailleurs, même lorsque les réclamations ne résultent pas de la même source ou d'une source connexe, le juge a le pouvoir discrétionnaire de les réunir s'il lui apparait opportun de les instruire ensemble.
>
> (...)
>
> [29] De même, le Juge Bouchard s'exprime ainsi sur cette question :
>
> « ...
>
> Il y a là un risque potentiel de jugements contradictoires dans la mesure où ces causes devraient procéder chacune de leur côté, puisque le Tribunal saisi de chacun de ces litiges aura à se

*prononcer sur la clause de non-concurrence d'une part, et sur les obligations des parties en regard du contrat intervenu entre elles d'autre part.*

*Par ailleurs, la gestion de ces deux dossiers qui semble à prime abord plus complexe s'ils sont réunis, favorise cependant une plus grande concertation entre les parties pour les mettre en état. En cas de différend entre elles à ce sujet, le tribunal peut aussi être appelé à aider les parties dans le cadre de la gestion de ces instances.*

*Dans ces circonstances, le tribunal est d'avis qu'une saine administration de la justice requiert de réunir ces deux demandes introductives.*

*(…) »*

**« [32] Une partie importante de la preuve sera sensiblement la même bien que des preuves distinctes devront être apportées quant à certains éléments.**

**[33] Compte tenu des points communs dans les deux dossiers, il est justifié de les réunir. »**

E.   Lorsque le sort de deux actions différentes est lié, au moins en partie à la détermination de la conduite d'une partie qui est au cœur même des deux litiges, il y a lieu d'ordonner la réunion.

5)   <u>Ross and Anglin Ltd.</u> c. <u>David Thompson & al,</u> 2008 QCCS 810, (C.S.), par. 1, 2, 4, 14, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25, 26

*"[14] Davis a envers "Ross and Anglin" une obligation de loyauté qui procède à la fois de son statut d'employé et d'administrateur.*

*[15] S'il a manqué à cette obligation, il peut être condamné au paiement des dommages.*

*[16] Le fait qu'il ait manqué à cette obligation de façon clandestine et hors la connaissance de son père et de ses frères peut avoir une conséquence sur leur décision de racheter ses actions et sur le prix et les conditions de la vente de telles actions.*

*(…)*

*[21] Le sort des deux actions est lié, au moins en partie, à la détermination de la conduite de David qui est au cœur même des deux litiges.*

*[22] Les conditions prévues à l'article 271 C.p.c. sont rencontrées même si l'identité des parties n'est pas parfaite puisque les principaux protagonistes sont les mêmes.*

*[23] Il existe véritablement un danger de jugement contradictoire.*

*[24] L'économie des articles 4.1 et 4.2 du Code de procédure civile exige que l'on ne fasse pas deux procès séparés alors que la preuve de certains faits essentiels à la décision dans l'un et l'autre dossier est la même. »*

MONTRÉAL, le 21 novembre 2012

**ROBINSON SHEPPARD SHAPIRO**
S.E.N.C.R.L. ⊛ L.L.P.

Procureurs de la Demanderesse

# EXHIBIT B

Case 0:25-cv-60712-DSL   Document 1   Entered on FLSD Docket 04/14/2025   Page 15 of 26

**IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO. <u>CACE24005937</u>   DIVISION: <u>07</u>   JUDGE: <u>**Tuter, Jack B., Jr. (07)**</u>

**PROMARK ELECTRONICS INC.**

Plaintiff(s) / Petitioner(s)

v.

**BYOPLANET INTERNATIONAL, LLC**

Defendant(s) / Respondent(s)

_____/

## <u>**FINAL ORDER**</u>

On February 20, 2025, the Court held an evidentiary hearing relating to an objection to domestication of a foreign judgment. The hearing consisted of introduction of agreed exhibits, argument of counsel and testimony from an expert for each side.

On May 10, 2024, Plaintiff in Execution and Judgment Creditor, Promark Electronics, Inc. filed a Motion for Proceedings Supplementary. Plaintiff posits it obtained a final judgment against Defendant, ByoPlanet International, LLC, from the Superior Court of Canada, Province of Quebec, District of Montreal on <u>March 12, 2024</u>.

Pursuant to section 55.604, Florida Statutes, Plaintiff recorded a certified copy of the Canadian Judgment in Broward County on March 18, 2024 together with an Affidavit for Recording Out-of-Country Foreign Judgment under Florida's Uniform Out-of-Country Foreign Money-Judgment Recognition Act. Plaintiff argues, pursuant to the statute, ByoPlanet had thirty days to file a notice of objection with the clerk of court, specifying its grounds for nonrecognition or non-enforceability. Plaintiff claims no objection was filed and on April 18, 2024, the clerk recorded the certificate.

As stated, in the May 21, 2024 Judgment, the Superior Court of Canada <u>on March 12, 2024</u> rendered its **First Judgment** finding ByoPlanet liable to Promark for $6,745,787.66 CAD. The Court also found that ByoPlanet's Cross-Application, for abuse of process was also well-taken. Plaintiff claims ByoPlanet did not appeal the March 12,

2024 judgment.

A subsequent hearing was held by the Canadian Court for reimbursement of attorneys' fees and punitive damages against ByoPlanet and its president Richard Patrick Michael O'Shea. Canadian law permits an action against a director of a company if the Court determines there was an abuse of process by the company. In the May 21, 2024 Judgment, the Court noted it was tasked with determining (1) the damages flowing from the declaration of abuse by ByoPlanet; and (2) whether the forced intervention of Richard Patrick Michael O'Shea, the Chief Executive Officer of ByoPlanet, should be ordered and whether he should be liable for attorney fees and punitive damages.

The Foreign Court granted Plaintiff's Fee Application by default, resulting in a **Second Judgment** (May 21, 2024) against Richard Patrick Michael O'Shea and ByoPlanet. In the 15-page Judgment, the Court determined that O'Shea should be forcibly impleaded since he is the principal and director of ByoPlanet and his reprehensible conduct was at the core of the abuse. The Court awarded Promark damages of $570,467.46 CAD in professional attorney fees and disbursements and $150,000 CAD in punitive damages. The Court held both ByoPlanet and Richard Patrick Michael O'Shea jointly and severally liable for the additional amounts.

The resulting objection by Richard Patrick Michael O'Shea relates **solely** to the $570,467.46 CAD judgment for attorney fees and punitive damages. O'Shea complains he was not afforded proper notice of the proceedings; was not afforded due process; and, the alleged notice he did receive was contrary to Canadian law.

However, at the hearing, O'Shea's counsel provided zero explanation why O'Shea did not appeal the judgment against him to an appellate court in Canada. Instead of pursuing his due process arguments in the appropriate forum he chose to raise them for the first time in Broward County. During the hearing it was clear O'Shea received notice of the proceedings in Canada. The Canadian Court made multiple findings relating to his many attempts to evade service of process. Finally, the Court permitted service via email which the evidence showed he read and even responded that he was attempting to retain an attorney.

As to the expert testimony, the Court accepts the expert testimony by Promark as

credible and rejects the expert testimony from ByoPlanet's expert.

O'Shea's many complaints should have been asserted in Canada. He chose not to appear at the hearing before the undersigned nor did he choose to testify. A reasonable inference from O'Shea choosing not to testify is that his testimony would not sufficiently support his due process claims.

The objection asserted by Richard Patrick Michael O'Shea is meritless and **OVERRULED**. The judgment creditor may proceed to collect the $570,467.46 CAD Final Judgment against Richard Patrick Michael O'Shea and/or ByoPlanet.

**DONE AND ORDERED** in Chambers at Broward County, Florida on <u>24th day of February, 2025</u>.

<u>CACE24005937 02-24-2025 10:11 AM</u>
Hon. Jack Tuter
**CIRCUIT COURT JUDGE**
Electronically Signed by Jack Tuter

**Copies Furnished To:**
Alejandra Mercedes Iglesia , E-mail : aiglesia@bastamron.com
Alejandra Mercedes Iglesia , E-mail : eservice@bastamron.com
Alejandra Mercedes Iglesia , E-mail : mdesvergunat@bastamron.com
BYOPLANET INTERNATIONAL, LLC , Address : Genovese Joblove & Battista PA 100 SE 2nd St Fl 44 Miami, FL 33131
James M. Paul, Esq. , E-mail : Jpaul@nexuscapital.pe
James M. Paul, Esq. , E-mail : Jpaul@justicelawgroup.ai
James M. Paul, Esq. , E-mail : Jpaul@goodsaltlife.com
James Martin Paul , E-mail : service@bangenergy.com
James Martin Paul , E-mail : jamtau@aol.com
Jeffrey Bast , E-mail : jmiranda@bastamron.com
Jeffrey Bast , E-mail : jbast@bastamron.com
Michael S Perse , E-mail : mperse@klugerkaplan.com
Michael S Perse , E-mail : service@klugerkaplan.com
Michael S Perse , E-mail : miglesias@klugerkaplan.com

# EXHIBIT C

1             You're on mute, Mr. Paul.

2             Counsel, you're on mute.  I can't hear

3        you.  I'm sorry.

4             MR. PAUL:  Sorry about that.

5             THE COURT:  There you go.

6             MR. PAUL:  Mr. Novak, are you there?

7        Can you guys hear me now?

8             MS. IGLESIA:  Yes.

9             THE WITNESS:  Yes.  Thank you, counsel.

10            MR. PAUL:  Thank you.

11                  CROSS EXAMINATION

12       BY MR. PAUL:

13            Q.   Mr. Novak, you state on your CV that you

14       worked for Robinson Sheppard and Shapiro; is that

15       correct?

16            A.   Yes.

17            Q.   And how many years would you say that you

18       worked at that firm?

19            A.   I worked there for five years, when I

20       started my career.

21            Q.   Okay.  And are you familiar with a matter

22       by the name of Auto Visio vs. Kaplan (phonetic), a

23       matter that you were co-counsel on, back in 2016?

24            A.   I -- I am not, counsel.

25            Q.   You were co-counsel on that matter.

1      A.   I -- I am not aware of that.  I plead a

2  lot of cases, Mr. Paul, and that's going back, if

3  I'm not mistaken, close to nine years.

4      Q.   So you're saying that you do not recall

5  being co-counsel on the matter with Auto Visio vs.

6  Kaplan?

7      A.   That's correct.

8           MR. PAUL:  Well, I do have a judgment

9      here, Your Honor, that was not called into

10     evidence prior to this hearing, as far as

11     Mr. Novak being co-counsel on a matter.  May

12     I please read from that judgment?

13          MS. IGLESIA:  I haven't had an

14     opportunity to see it, Your Honor.

15          MR. PAUL:  This is my cross-examination,

16     so it would not have been pleaded before.

17          THE COURT:  Well, I mean --

18          MS. IGLESIA:  What's the relevance?

19          MR. PAUL:  The relevance is to show the

20     credibility and the expertise of Mr. Novak's

21     expertise with regards to procedural Quebec

22     law.

23          THE COURT:  Well, this is not really

24     being done properly, but, Mr. Paul, just

25     getting to the point, I'm going to let you go

1        ahead and ask the question.

2    BY MR. PAUL:

3        Q.    Sure.   So, Mr. Novak, isn't it true that

4    at this hearing, the Defendant was an unrepresented

5    party?

6        A.    Counsel, I have no idea what you're

7    referring to.   I apologize.   Do you have a specific

8    case for which I was involved with, that

9    you're suggesting?

10       Q.    Yes, I do.   Give me one second.

11       A.    Do you have a citation?

12       Q.    Oh, yes.   I do.   It -- Mr. Jean-Pierre

13   Sheppard was co-counsel on this matter with you.

14   It was an August 30th of 2016 matter.   And there

15   was a judgment rendered in favor of an

16   unrepresented party.   Specifically, the

17   unrepresented party won on the matter based off of

18   deficiencies in Quebec procedural law.

19       A.    So while you were referring to the

20   judgment, we have a service called CanLii, counsel,

21   in Canada.   And if I may, can I read the citation

22   just to ensure, because you haven't given me any

23   document that we're --

24       Q.    Sure.

25       A.    -- referring to the same case.   Is it

```
 1    O-Y -- against or vs -- Kaplan, K-A-P-L-A-N, 2016
 2    QCCS 45, 48 CanLii?
 3         Q.   That is correct.
 4         A.   Did you read the decision, counsel,
 5    before questioning me on cross?
 6         Q.   I did, Your Honor.
 7              THE COURT:  Okay.  Both of you --
 8              THE WITNESS:  Your Honor, just to point
 9         out, I mean, I think it's relevant.  You will
10         look at the bottom of the page.  There's a
11         reason why I didn't remember.  It's because I
12         was not counsel on this file.  You can see
13         that it clearly states --
14              THE COURT:  Mr. Novak -- Mr. Novak, I
15         can't see anything.  Let Mr. Paul ask the
16         questions so we can get through this.
17              THE WITNESS:  Sure.
18              THE COURT:  Mr. Paul.
19              MR. PAUL:  Thank you, Your Honor.
20    BY MR. PAUL:
21         Q.   So, Mr. Novak, based off of the case that
22    you pulled up, there was a three-week trial,
23    correct?
24         A.   I -- I don't see my name, Mr. Paul,
25    there, but if I'm reading dates of hearing, if
```

Page 81

1    that's what you're referring to, maybe I can --

2         Q.    -- your answer.

3         A.    -- maybe you want to put it on the

4    screen, but I see dates of hearing, May 10, 11, 12,

5    13, 16, 17, 18, 19, 20, 24, 27.  So based on that,

6    it would be incorrect to state that it was a

7    three-week trial.  It seems to be approximately ten

8    days, based on my quick math.

9         Q.    And if you look at provisions 132 and

10   133, I'll read this into the record.  The documents

11   produced to prove Auto Visio's status aren't

12   finished and are not supported by an official

13   translation.  This is contrary to Section 140 CCQ

14   and  therefore not admissible evidence.  133, as

15   far -- excuse me -- as 4 PC 65 is not properly

16   introduced into evidence, the way to prove

17   semi-authentic acts is to set out in Section 2822

18   CQ -- CCQ:  The documents provided cannot be said

19   to happen and issued by a foreign public officer

20   and therefore does not make proof of this

21   content -- or its content.

22             Are you still stating, Your Honor --

23   excuse me -- Mr. Novak, that you are not recalling

24   being a co-counsel on this matter?

25        A.    Well, it's clearly indicated on the

Page 82

```
 1   bottom of the page that I'm not involved in the
 2   case.  It's -- there is a citation as to who the
 3   lawyer is, and it reads "Mtre," which is Esquire in
 4   Quebec, Jean-Pierre Sheppard, counsel for the
 5   plaintiff.  I -- I don't see my name, Mr. Paul, and
 6   I'm trying to understand where you see it.
 7        Q.    Let me see.  I think I do have an email
 8   based off of your involvement in this matter.  That
 9   was not produced.  Give me a second.  I apologize.
10            MS. IGLESIA:  Your Honor, once, again, I
11        ask what's the relevance.  I object to the
12        scope.  I haven't seen the documents.
13        Counsel's already testified he doesn't
14        recall.  He wasn't counsel of record in the
15        case.
16            MR. PAUL:  The relevance is the
17        credibility of Mr. Novak based off of the
18        irregularities with regards to Quebec law.
19        He was part of co-counsel on a matter that
20        was three weeks long, approximately ten days,
21        by unrepresented counsel.  And judgment was
22        entered in favor of that unrepresented
23        counsel, as he was co-counsel on matters that
24        were specific to Quebec law.
25            So the relevance is, we're trying to
```

```
1        show that he is not an expert in Quebec law
2        as he processed to be --
3              MS. IGLESIA:  Okay.  What's --
4              MR. PAUL:  -- or professed to be.
5              THE COURT:  Well, Mr. Paul, the problem
6        is that you're trying to impeach with
7        collateral evidence that was neither
8        disclosed --
9              MS. IGLESIA:  Correct.
10             THE COURT:  -- nor made of record where
11       she could see it, or I could see it.  So
12       you're really putting your adversarial
13       counsel at a disadvantage.  She has no idea
14       what you're reading from.  I allowed -- I
15       allowed you some latitude on it.
16             MR. PAUL:  Sure.  I respect that, our
17       Honor.
18             THE COURT:  I understand the point.
19             Next question, please.
20             MR. PAUL:  Sure.  I understand, Your
21       Honor.  Give me one second, Your Honor.  I
22       apologize.
23             THE COURT:  That's all right, sir.  Take
24       your time.
25    BY MR. PAUL:
```

Page 84

1       Q.   Mr. Novak, in your testimony earlier you
2   said that you were counsel for Promark at the onset
3   of this litigation, correct?
4       A.   Correct.
5       Q.   Is it correct that you were the
6   responsible member for drafting the contract at
7   issue in this matter?
8       A.   That is incorrect.
9       Q.   You were not the drafting party to the
10  supply agreement at matter in this matter -- in
11  this case.
12      A.   I think there were a lot of negatives in
13  the question, Mr. Paul.  Can you rephrase so -- so
14  it would be easier for me to answer, a yes or no?
15      Q.   Can you hear me?
16          MS. IGLESIA:  Yeah.  We can hear you.
17          THE WITNESS:  Yes, counsel.  I hear you.
18      Can -- can you rephrase?  I just want to --
19  BY MR. PAUL:
20      Q.   Sure.  Isn't it true that you were
21  counsel of record that drafted the supplier
22  agreement that is at issue of the underlying
23  judgment?
24      A.   No.  That's not true, counsel.  I don't
25  draft contracts.  I -- I litigate.